IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


ANA LUISA HERNANDEZ,

        Plaintiff,

vs.                                                     No. 12-CV-00176 MCA/WPL

CITY OF SUNLAND PARK, N.M.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This case is before the Court upon Defendant's Motion for Summary Judgment. [Doc. 39] The Court has considered the written submissions of the parties, the record in this case, and the applicable law, and is otherwise fully advised.

**SUMMARY JUDGEMENT STANDARDS**

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim . . . on which summary judgment is sought." As our Court of Appeals has succinctly stated:

> Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . .the moving party is entitled to a judgment as a matter of law." A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented.

*Adamson v. Multi Community Diversified Serv., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). "The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment." *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). "It is not [the court's] province at the summary judgment stage to weigh the evidence

or to make credibility determinations." *Sanders v. Southwestern Bell Telephone, L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).

**PROCEDURAL HISTORY AND BACKGROUND**

Plaintiff was hired by Defendant in June 2006.  [Doc. 45-4 at 2]  Initially, she worked as a driver's license and title clerk in Defendant's Motor Vehicle Division ("the MVD"). [*Id.*] Plaintiff was supervised by Neil Morgan, and then by Linda Vasquez. [Doc. 45-4 at 2] She does not appear to have experienced problems in her workplace while working under these supervisors.  In 2008 or 2009, Raquel Villagran was hired as manager of the MVD.  [Doc. 45-4 at 2]  After Villagran was hired as manager, Virginia Salazar was hired as an assistant manager. [Doc. 45-4 at 2]   In February 2009,  Salazar made sexually inappropriate remarks about Plaintiff, including salacious references to a "banana diet" accompanied by rude gestures.  [Doc. 45-4 at 3-4]  Co-workers overheard the remarks, embarrassing Plaintiff.  [Doc. 45-4 at 4]  Plaintiff complained to Salazar about the incident.  [Doc. 45-4 at 3] She recalled that "[o]nce I placed that complaint, I was being made to feel very uncomfortable . . . I started feeling I was being retaliated, and it was verbally, and I was made to feel uncomfortable as to where I'm sitting, where I'm walking."  [Doc. 45-4 at 5] Salazar was discharged from employment with Defendant on March 16, 2009.[1]  [Doc. 45-4 at 5]


On March 17, 2009, Villagran was suspended for three days for violating certain unidentified policies. [Doc. 40-1 at 14] Villagran learned that Plaintiff had been a witness against her.  [Doc. 40-1 at 14]  Thereafter, Villagran began subjecting Plaintiff to harassment, such as

---

[1]It is not clear from the record whether Salazar was discharged for making the banana diet remarks. [Doc. 45-4 at 5] The timing of her discharge is suggestive of a relationship to the banana diet incident.

singling out Plaintiff for discipline for being late, giving Plaintiff a negative evaluation, reporting "half-truths" about Plaintiff to superiors, and accusing Plaintiff of performance issues. [Doc. 40-1 at 14-15] In June 2009, Plaintiff filed an EEOC complaint alleging that the February 2009 incident constituted sex discrimination and that Defendant had subjected her to a hostile work environment for having reported the February 2009 incident and for having participated as a witness against Villagran.[2] [Doc. 40-1 at 14-15] On June 15, 2009, Villagran issued Plaintiff two "write ups" for insubordination. [Doc. 40-1 at 16] On July 24, 2009, Plaintiff was given a three day suspension for insubordination. [Doc. 40-1 at 16] Plaintiff began to experience hostility from her co-workers. [Doc. 45-14 at 3] Plaintiff's co-workers began complaining about her to Villagran. [Doc. 45-14 at 3-4]

Plaintiff filed a second EEOC complaint in September 2009, alleging that she had been subjected to a hostile work environment in retaliation for having filed the June 2009 EEOC complaint. [Doc. 40-1 at 16]

In October 2009, Jaime Aguilera was hired as City Administrator. [Doc. 45-4 at 20]

In January 2010, Plaintiff was transferred from the MVD to Defendant's Water Department [Doc. 45-4 at 2] at the direction of Aguilera. [Doc. 40-1 at 13] Aguilera explained to Plaintiff that she was transferred because she could not get along with her co-workers in the MVD. [Doc. 45-14 at 2, 5] Plaintiff disputed Aguilera's stated reason for the transfer--that Plaintiff was not getting along with her co-workers in the MVD. [Doc. 45-4 at 21; Doc. 45-14 at 2] Aguilera told Plaintiff that her co-workers had given statements complaining that Plaintiff

_____

Its not clear from the record whether the policies allegedly violated by Villagran related to her handling of Plaintiff's complaint about the banana diet incident or some other unrelated matter.

scolded and screamed at them when they asked Plaintiff for assistance. [Doc. 45-14 at 4] Plaintiff believed that Aguilera began directing Plaintiff's supervisors in the Water Department to retaliate against her for filing the EEOC complaints. [Doc. 45-4 at 19]   Her co-workers  were directed not to speak to her, [Doc. 45-4 at 21] and were urged to join the "Aguilera team" and to report on everything that Plaintiff did [Doc. 45-4 at 19]. Plaintiff felt that she was given "busy work."  [Doc,. 45-4 at 21] She felt that she was being subjected to continuous retaliation at the direction of  Aguilera. [Doc. 40-1 at 6; Doc. 45-4 at 19-21 ]  At one point during her employment in the Water Department, Plaintiff was presented with a "write-up with 10 items." [Doc. 40-1 at 6]

On April 22, 2010, the EEOC mailed to Plaintiff a Dismissal and Notice of Rights informing Plaintiff that the EEOC had not been able to confirm any violation of statutes enforced by the EEOC.  [Doc. 45-2]  The Dismissal and Notice of Rights included a Notice of Suit Rights advising Plaintiff that she had 90 days within which to file a lawsuit based on the June and September 2009 charges.  On July 26, 2010, the New Mexico Department of Workforce Solutions issued an Order of Nondetermination with respect to Plaintiff's June and September 2009 EEOC Complaints.  [Doc. 45-3]  The Order of Nondetermination advised Plaintiff that "you have ninety (90) days from the date of service of this Order of Nondetermination to file notice of appeal in the district court. . . ."

In October 2010, Aguilera was replaced by Andrew Moralez as City Administrator. [Doc. 40-2 at 1]  Aguilera hired Laura Garcia as Human Resources director. [Doc. 40-2 at 2]

In November 2010, Plaintiff was transferred from the Water Department to a split position with the Planning Department/Human Resources Department. [Doc. 40-1 at 6, 17; Doc. 45-4 at

21] Plaintiff viewed the transfer itself as retaliation: "[t]hey're moving me around from position to position, when it's not needed." [Doc. 45-4 at 21]   Moreover, according to Plaintiff, following the transfer:

> I was not given a place to sit when I was--I was always having to find somewhere to sit.  And then I found a desk that wasn't being used, and I was let be there for a couple of weeks, and then it was assigned to someone else, one of the City Councilman's sister.
>     And so then I would find myself typing on my lap. And then I would find a desk, a table to sit, and then I had to move because they were going to have a meeting.  So I never had my place.  I didn't have my staplers. I didn't have my tape. I had no supplies. I always had to--and I was not being given assignments.  I always had to find what to do on my own.
>     So I started learning a lot in City Planing because I was moving about a lot and trying to find--so I'm listening to what's happening, how things are playing. But I was being discriminated in the manner that I wasn't given a place or duties to do, as the other employees. . . . .

[Doc. 45-4 at 7] "[T]he treatment continued by not having a place to work, an assigned desk. I had to go find myself work. . . ."  [Doc. 45-4 at 23]  Plaintiff believed that Liz Gamez, a Human Resource Department employee, was retaliating against Plaintiff for having filed the EEOC complaints.  [Doc. 45-4 at 23]  When Plaintiff pointed out that she did not have a desk, Garcia and Gamez told her "[g]o find somewhere to sit." [Doc. 45-4 at 23]

In late 2010, Plaintiff applied for the position of city planner. [Doc. 45-4 at 9] She was one of a handful of applicants. [Doc. 45-4 at 10] Plaintiff was interviewed by a panel consisting of Garcia, Gamez and Linda Vasquez[3].  [Doc. 45-4 at 10]  In January 2011, Chris Redfearn, a male of approximately Plaintiff's age, was hired.  [Doc. 40-1 at 7, 9, 17]

In January 2011, Plaintiff applied for the position of administrative assistant to the Mayor.

_____

[3]As previously noted, Vasquez had been manager of the MVD and Plaintiff's supervisor. Vasquez was transferred to the City Planner's Office when Villagran was hired. [Doc. 45-4 at 2]

[Doc. 40-1 at 9] She was interviewed, but a younger male was hired. [Doc. 40-1 at 9]

On February 18, 2011, Plaintiff was placed on administrative leave.  [Doc. 40-1 at 11] She remained on administrative leave during an investigation into her job performance. [Doc. 40-1 at 11] She was discharged on April 15, 2011. [Doc. 40-1 at 23]

 In May 2011, Plaintiff filed a third EEOC complaint.  [Doc. 40-1 at 17]  In her third EEOC complaint, Plaintiff alleged that in November 2010, she had been moved from Defendant's Water Department to its Human Resources Department; that in January 2011, she was not selected for the position of planner; that in February 2011 she was not selected for the position of assistant to the mayor; that in February 2011 she was placed on administrative leave continuing into March 2011; and that on April 15, 2011 she was discharged for disloyalty.  Plaintiff stated that "I believe that have been discriminated against because of my age, 44, my sex, female[,] and in retaliation for having filed two previous charges of discrimination. . . . "  On July 28, 2011, the EEOC issued a Dismissal and Notice of Rights.  [Doc. 45-8]  On August 18, 2011, the New Mexico Department of Workforce Solutions issued an Order of Nondetermination.  [Doc. 45-9]

**PLAINTIFF'S LAWSUIT**

Plaintiff filed suit against Defendant on September 26, 2011.  [Doc. 1-1] The complaint was filed in Dona Ana County District Court, and asserted only state-law claims. [Doc. 1-1] Defendant removed the case to this Court on February 27, 2012.  Thereafter, on May 21, 2012, Plaintiff filed a First Amended Complaint (FAC), alleging both state and federal claims.  [Doc. 14] The FAC alleges that she was subjected to sex and age discrimination and retaliation between November 2010 to April 15, 2011, the date of her termination.

**Time-barred Claims**

Title VII and ADEA cases must be filed within 90 days of the claimant's receipt of a right-to-sue letter. 42 U.S.C. § 2000e-5(f)(1); *Kinney v. Blue Dot Serv. of Kan.*, No. 12-3205, 2012 WL 6582375 *1 (10th Cir. Dec. 18, 2012) (unpublished decision); *Guevara v. Best Western Stevens Inn, Inc.*, 78 Fed. Appx.703, 704 (10th Cir. 2003). A similar 90-day deadline applies to appeals from an Order of Nondetermination issued by the New Mexico Human Rights Division. NMSA 1978, § 28-1-13(A) (2005). Where, as here, the actual date of receipt does not appear of record, a court may presume that the right-to-sue letter was received within five days of the date of issuance. *Lozano v. Ashcroft*, 258 F.3d 1160, 1164-65 (10th Cir. 2001). Applying this presumption, it is apparent that Plaintiff's complaint was not filed within 90 days of the April 22, 2010 Dismissal and Notice of Rights or the July 26, 2010 Order of Nondetermination. Plaintiff's failure to proceed to court within 90 days of her receipt of the April 22, 2010 and July 26, 2010 notices deprives the Court of jurisdiction over the claims embraced by her 2009 complaints.

**The November 2010 transfer from the Water Department.**

As previously noted, Plaintiff was transferred from the Water Department to a split position with the Planning Department/Human Resources Department in November 2010. The Court understands Plaintiff to be challenging this change in the conditions of her employment as an act of retaliation. To state a prima facie case of retaliation under Title VII, a plaintiff must show: "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Tabor*, 703 F.3d at 1219 (quoting *Argo v. Blue Cross and Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)). *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517,

2533 (2013) makes  clear that the requisite "causal connection" is that of "traditional principles of but-for causation."

With respect to the first prong, there can be no dispute that Plaintiff's filing of the June and September 2009, EEOC complaints constituted protected conduct:  "It shall be an unlawful employment practice for an employer to discriminate against any of his employees. . . because he has made a charge. . . under this subchapter."  42 U.S.C. § 2000e-3(a).

With respect to the second prong, the Court begins by noting that "[w]ithout significant adverse changes to working conditions, a lateral transfer is not an adverse employment action." *Lara v. Unified Sch. Dist.*, 350 Fed. Appx. 280, 284 (10th Cir. 2009).  Here, there is evidence that in her new position Plaintiff at times had to scrounge for work and that she was not provided with a suitable workspace, at times having to balance a typewriter on her lap.  There is no dispute that Plaintiff's salary and benefits remained the same.  The question is whether Plaintiff's evidence establishes something more than "ordinary workplace tribulations."  *Keller v. Crown Cork & Seal USA, Inc.*, 491 Fed. Appx. 908, 914 (10th Cir. 2012).  While it is a close question, the Court concludes that a reasonable jury could find that the manner in which Plaintiff was treated following the transfer amounted to conditions that a reasonable employee would view as materially adverse.   The Court concludes that Plaintiff has made out a genuine issue of material fact as to the second element of her prima facie case of retaliation.

With respect to the third prong, the Court begins by noting that the lateral transfer from the Water Department to the Planning Department/Human Resources Department occurred in November 2010.  [Doc. 40-1 at 17]  Plaintiff's then-most recent protected activity occurred in September 2009, resulting in a gap of over a year between the protected activity and the alleged

retaliation.  In view of this gap, Plaintiff is not entitled to an inference that the change in work conditions was causally related to her protected activity.  *EEOC v. C.R. England, Inc.*,  644 F.3d 1028, 1051-52 (10th Cir. 2011).

Plaintiff attempts to bridge this temporal gap with evidence that after she filed her June 2009 EEOC complaint she was continuously subjected to a hostile work environment.  *See Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996) (relaxing "closely followed" requirement where pattern of retaliation begins soon after the protected activity and only later culminates in adverse employment action).

Plaintiff testified to her belief that Gamez and Aguilera orchestrated retaliation against her while she was employed in the Water Department. [Doc. 45-4 at 7]  By November 2010, when the lateral transfer from the Water Department to the split position occurred, Aguilera had been replaced by Andrew Moralez, who had succeeded Aguilera as City Administrator in October 2010. Plaintiff has not identified the decision maker who ordered the transfer.[4] Assuming that Moralez ordered the transfer, Plaintiff provides no evidence that would permit a jury to attribute retaliatory animus to Moralez, who was not employed as City Administrator when Plaintiff filed her EEOC complaints.[5]  As to Gamez,  Plaintiff provides no evidence that Gamez had the authority to effect

---

[4]This failure of proof illustrates a pervasive problem with Plaintiff's presentation of her case:  Plaintiff assumes that the Court somehow is familiar with the administrative structure of Sunland Park.  The Court, of course, has no information about the personal or professional relationships among the personnel within the Sunland Park administration other than that provided by the parties.

[5]Our Court of Appeals has recognized that an inference of retaliation is strengthened by evidence that the alleged retaliator was directly implicated by the earlier EEOC charge.  *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1217 (10th Cir. 2003).  It follows that evidence that the alleged retaliator had no stake in the earlier EEOC charge would correspondingly undercut any inference of retaliation. *See Archuleta v. Colo. Depot of Institutions, Div. of Youth Serv.*, 936

Plaintiff's transfer or sufficient influence to persuade Moralez to order the transfer.

Turning to the unfavorable conditions that Plaintiff experienced after the transfer, there is a complete absence of evidence implicating Moralez. As previously noted, Plaintiff has no evidence explaining why Moralez would have harbored animosity toward Plaintiff for filing EEOC complaints in 2009, before he was hired as City Administrator. Plaintiff has not come forward with any evidence showing that Moralez instigated the unfavorable treatment. As to Gamez, Mariana Chew, a supervisor in the Water Department, testified at her deposition that Liz Gamez showed animosity toward Plaintiff. [Doc. 45-10 at 12] But Chew also testified that this animosity was directed at "[n]ot only Ana Hernandez, but Isabel Santos and Sofia Rangel and most of the good workers in the utilities department," [*id.*] undermining any inference that the animosity was based on protected activity. Chew agreed with the statement that Gamez "had animosity against 90 percent of people in the utilities department," [Doc. 45-10 at 28] further undermining the inference that Plaintiff was being singled out for having filed the 2009 administrative complaints.[6]

Plaintiff's case that Garcia ignored Plaintiff's requests for assignments and a workspace as retaliation for Plaintiff's having filed the 2009 administrative complaints is not weak, it is

---

F.2d 483, 487-88 (10th Cir. 1991) ("The problems that arose after plaintiff's reinstatement in 1980 occurred under different supervisors and bore no apparent relationship to the [earlier] charge of sex discrimination.").

[6] Plaintiff appears to lose track of the point that not all retaliation is actionable under Title VII or the ADEA. Plaintiff testified that she was criticized for not being "flexible," which she understood to mean that she was perceived as not willing to do "illegal stuff" or "bend the rules." [Doc. 45-4 at 24] "[Title VII] is not a statute intended to police standards of general fairness in the workplace, or even to protect against the firing of an employee in order to cover up wrongdoing by an employer." *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 262 (4th Cir. 2008).

nonexistent.  Plaintiff has not come forward with any evidence showing that Garcia was motivated to retaliate against Plaintiff for having filed the 2009 administrative complaints.

In the wake of *Nassar*,  Plaintiff must have proof that would permit a reasonable jury to find that it is more likely than not that the desire to retaliate against Plaintiff for having filed her 2009 EEOC complaints was the but-for cause of the subsequent harassment.  Given the lapse of time between Plaintiff's protected activity and the lateral transfer, the absence of direct or circumstantial evidence that Gamez or Garcia was hostile to Plaintiff because of the 2009 EEOC complaints and evidence that Gamez was hostile to 90 percent of Plaintiff's co-workers, no reasonable jury could find on the on the record before the Court that it is more likely than not that the unfavorable treatment Plaintiff experienced after her transfer was due to animus against Plaintiff for having filed the 2009 administrative complaints. The Court concludes that Plaintiff has failed to establish genuine issues of material fact as to the third prong of her prima facie case. Accordingly, the Court will grant summary judgment in favor of Defendant as to Plaintiff's federal claim of retaliation based on the November 2010 lateral transfer.

Plaintiff points out that *Nassar* is not directly controlling as to her claim under the New Mexico Human Rights Act.  Under the NMHRA, it is an unlawful discriminatory practice for any person to "engage in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice or has filed a complaint . . . under the Human Rights Act[.]"  NMSA 1978, §  28-1-7(J).  Although New Mexico Courts look to federal decisions for guidance in interpreting the NMHRA, New Mexico courts ultimately are required to defer to the language enacted by the New Mexico Legislature. *Gonzales v. N.M. Dept. of Health*,  129 N.M. 586, 593 (2000).  Given significant differences in the language employed by Congress, 42 U.S.C.

§ 2000e-3(a) and the New Mexico Legislature, NMSA 1978, § 28-1-7(J), it is not at all clear that the New Mexico Supreme Court would adopt the reasoning of the United States Supreme Court in *Nassar*.

The Court need not decide whether the New Mexico Supreme Court would follow *Nassar* to resolve Plaintiff's claim that the transfer from the Water Department amounted to retaliation under § 28-1-7(J) , because even under the "mixed-motives" standard approved by the New Mexico Supreme Court in *Nava v. City of Santa Fe*, 136 N.M. 647, 650 (2004), Plaintiff's evidence is insufficient to establish a genuine issue of material fact. As previously noted, there is no evidence proffered that would justify attributing retaliatory animus to Moralez,  and there is no evidence that Gamez had the authority to effect Plaintiff's transfer or sufficient influence to persuade Moralez to order the transfer.  Given the substantial temporal gap between the 2009 protected activity and the unfavorable treatment following the November 2010 transfer and the absence of direct or circumstantial evidence of discriminatory animus, no reasonable jury could say on the record before the Court that it is more likely than not that Gamez or Garcia were "motivated in part" *Nava*, 136 N.M. at 650, by a desire to retaliate against Plaintiff for filing the 2009 administrative employment discrimination complaints. The Court concludes that Plaintiff's evidence fails to establish a genuine issue as to causation even under the more relaxed standard of *Nava*.

**City Planner Position**

To make out a prima facie case of sex[7] discrimination in violation of  42 U.S.C. § 2000e-

---

[7]Plaintiff testified at her deposition that Mr. Redfearn, the successful candidate, was "around about my age," and that the allegation in her complaint that he was "20-29" was a typo. In view of this testimony, the Court understands Plaintiff to have abandoned any claim that she

2(a), Plaintiff must come forward with evidence that would permit a reasonable jury to find:"(1)

she belongs to a protected class; (2) she applied for an available position for which she was

qualified ; (3) she 'was rejected under circumstances which give rise to an inference of unlawful

discrimination.'" *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) (quoting *Texas Dep't*

*of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  Defendant focuses on the second prong,

arguing that Plaintiff has not come forward with evidence that she met the minimum requirements

for the position.  [Doc. 40 at  9-10]

    The job announcement attached to Defendant's memorandum in support of it motion for

summary judgment sets out the following requirements:

- Education:  A high school diploma or GED.  Bachelor's Degree in public or business administration, planning, urban development, architecture, engineering or a related field.
- Educational substitution:  Three years of professional experience in urban, regional or community planning, or building or zoning code enforcement, including plan review inspection or other land development processing.
- Knowledge of urban planning and zoning, and development and building construction principles and methods.
- Knowledge of zoning codes and related development and construction ordinances
- Knowledge of GIS mapping
- Ability to analyze complex situations and formulate effective solutions to such problems
- Ability to communicate clearly and concisely, orally and in writing, including mathematical, legal, regulatory and statistical information, to effectively present, persuade, negotiate, and mediate issues by explaining technically complex oral and written requirements and objective for interested groups and the public.
- Knowledge of the Spanish language desirable.

[Doc. 40-1 at 20]  According to Defendant, Plaintiff fails to meet the first two requirements:

---

was discriminated against on the basis of age with respect to the city planner position.

education and professional experience. [Doc. 40 at 9 ("Plaintiff further admitted in her deposition that she did not have a bachelor's degree or the three years of professional experience in the field that were the minimum requirements for the position.")]

As an initial matter, the Court notes that contrary to Defendant's reading of the educational and work experience requirements in the announcement attached to its memorandum, the educational and work experience requirements are disjunctive, not cumulative:  the announcement clearly states that the work experience requirements are an "Educational Substitution."  Therefore, even if the announcement attached to Defendant's brief were found to be controlling, Plaintiff would not have to have three years of professional experience if she satisfied the educational requirement.

At her deposition, Plaintiff testified that the position she applied for was "very basic," and required only a high school diploma or GED. [Doc. 45-4 at 10]  Plaintiff testified that according to the posting she saw, "it was pretty much for someone with office skills."  [Doc. 40-1 at 7]  When confronted with a copy of the announcement quoted above, Plaintiff denied that it was the same announcement to which she had responded in applying for the city planner position.  [Doc. 40-1 at 8]  This conflict in the evidence is largely a matter of credibility.  A reasonable jury conceivably could accept Plaintiff's testimony at face value, and find that there were two announcements and that Plaintiff met the educational requirements of the announcement which she described.[8]

_____

[8]It is possible that there was only one job announcement, and that Plaintiff simply misread that announcement.  For example, the announcement quoted above described the educational requirements as "[a] high school diploma or GED. Bachelor's Degree in public or business administration, planning, urban development, architecture, engineering or a related field."  The two educational requirements are not separated by a conjunction clarifying the relationship between the requirements, nor are the requirements numbered.  The Court can see how an unreflective or casual reader of the announcement might conclude that the two sentences

Defendant argues that even if Plaintiff has made out a prima facie case, the Court should find that Defendant has established a non-pretextual reason for not hiring Plaintiff: her lack of qualifications. As noted above, if Plaintiff's deposition testimony is believed, there is a reasonable view of the evidence under which Plaintiff meets the qualifications of the job. Indeed, the fact that Plaintiff was interviewed for the job suggests that she was viewed as at least minimally qualified. City Administrator Moralez testified at his deposition that "the first round of interviews would go to those people that met the minimum requirements." [Doc. 40-2 at 3]

The Court will deny summary judgment as to Plaintiff's claim that she was denied the city planner position because of sex discrimination.

The Court understands Plaintiff to be claiming in the alternative that Defendant's failure to hire her was in retaliation for her filing EEOC complaints in June and September 2009. As previously noted, a prima facie case of retaliation consists of proof that would permit the trier of fact to find (1) that the plaintiff engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected conduct and the subsequent adverse employment action. This claim of retaliation suffers from evidentiary problems going to the third prong-- causation.

Any alleged retaliation with respect to the city planner job occurred in January 2011, when an applicant other than Plaintiff was selected. Because this alleged retaliation occurred well over a year after Plaintiff's last protected activity, Plaintiff is not entitled to an inference of causation. *England, Inc.*, 644 F.3d at 1051-52. Furthermore, Plaintiff's nemesis was City Administrator

set out *alternative* educational requirements.

Aguilera. By January 2011, when the city planner position was filled, Aguilera was gone, having been replaced in October 2010 by Andrew Moralez.  Plaintiff provides no basis for attributing retaliatory animus to Moralez. The panel that interviewed Plaintiff consisted of Laura Garcia, Liz Gamez, and Linda Vasquez.  [Doc. 40-1 at 8; 45-4 at 10]  Laura Garcia, Defendant's Human Resource Director, was hired by City Administrator Andrew Moralez to fill the position of Human Resource Director after he took over in October 2010.  Linda Vasquez was the Director of City Planning.  [Doc. 40-1 at 8]  Vasquez had previously worked in the Motor Vehicle Division as an assistant manager, but was transferred to City Planning Department prior to the February 2009 incident. [Doc. 45-4 at 2] Plaintiff proffers no evidence demonstrating why Laura Garcia or Linda Vasquez  would have harbored animus toward Plaintiff for having filed EEOC complaints in June and September 2009.  The third member of the panel was Liz Gamez.  The Court has already explained, in its discussion of the November 2010 transfer, why Plaintiff's evidence is insufficient as to Gamez.  The Court concludes with respect to Plaintiff's Title VII claim that on the record before the Court no reasonable jury could find by a preponderance of the evidence that Plaintiff would have been hired to fill the city planner position but for her filing of EEOC complaints in June and September of 2009.  Alternatively, with respect to Plaintiff's claim under the NMHRA the Court concludes that on the record before the Court no reasonable jury could conclude that the decision to hire a candidate other than Plaintiff for the city planner position was motivated in part by a desire to retaliate against Plaintiff for having filed of EEOC complaints in June and September 2009.

**Failure to Hire Plaintiff as Administrative Assistant to the Mayor**

Defendant has moved for summary judgment on Plaintiff's claim that she was not hired for

the position of  Administrative Assistant to the Mayor  because of age and sex discrimination,

relying on the "personal staff" exception to Title VII's  definition of employee:   "[T]he term

'employee' shall not include any person elected to public office in any State or political subdivision

thereof, or any person chosen by such officer to be on such officer's personal staff. . . ."[9]  42 U.S.C.

§ 2000e(f):  This exception is to be narrowly construed.  *Starrett v. Wadley*, 876 F.2d 808, 821

(10th Cir. 1989).   This exception is an affirmative defense as to which Defendant bears the burden

of persuasion. *Hindman v. Thompson*,  557 F. Supp. 2d 1293, 1301 (N.D. Okla. 2008).  Where the

movant bears the burden of persuasion  (as, for example, a defendant moving for summary

judgment on an affirmative defense)

> the movant may not meet its initial burden by pointing to the nonmovant's lack of
> evidence on a contested issue. . . .When the movant bears the burden of persuasion
> at trial, the movant must produce evidence that would conclusively support its right
> to a judgment after trial should the nonmovant fail to rebut the evidence. In other
> words, the evidence in the movant's favor must be so powerful that no reasonable
> jury would be free to disbelieve it. Anything less should result in denial of
> summary judgment.

11 *Moore's Federal Practice* §56.40[1][c] (3d ed. 2011).

The administrative assistant exception requires that the excepted employee have been

"chosen by" the official.  City Administrator Moralez testified that "the position was going to be an

appointed position, so it's really up to the mayor to decide."  [Doc. 40-2 at 2]  Yet he also testified

that the applicants were interviewed and scored by a panel, [Doc. 40-2 at 3] which undercuts his

testimony that it was up to the mayor to decide. Plaintiff testified that Moralez told her that the

scores given by the panel "would be the indicator of who would be selected. . . . The mayor was

not referenced."  [Doc. 45-4 at 13]  The record is unclear as to exactly how the final decision to

---

[9]29 U.S.C. § 630(f) provides an identical exception to ADEA's definition of employee.

hire an applicant other than Plaintiff actually was made. In particular, the parties have not provided the Court with then-Mayor Martin Resindez 's recollection of who made the final decision as to whom to hire.  The Court concludes that there is a genuine issue of material fact as to whether Mayor Resindez actually chose the person hired as his administrative assistant.

Furthermore,  the personal staff exception does not apply to "employees subject to the civil service laws of a State government, governmental agency or political subdivision." 42 U.S.C. § 2000e(f);  29 U.S.C. § 630(f).  Under New Mexico law, a municipality such as Defendant may establish  a merit system of employment.  NMSA 1978, § 3-13-4 ("Any municipality may establish by ordinance a merit system for the hiring, promotion, discharge and general regulation of municipal employees.").  City Administrator Moralez testified that Defendant had rules and policies for handling employment issues.  [Doc. 40-2 at 2]  The April 15, 2011 letter notifying Plaintiff  that she had been terminated refers to Personnel Rules and Regulations.  [Doc. 40-1 at 23]  The evidence of record would permit a jury to find that Defendant had established a municipal civil service system.  By characterizing the position as "not classified.  It's exempt,"  [Doc. 40-2 at 3]  Moralez may have meant that the position of administrative assistant to the Mayor is exempted from coverage under an otherwise applicable municipal civil service system.  *Cf.*  NMSA 1978, § 10-9-4(K) (exempting assistants of certain officers from coverage under state personnel system). Defendant has not provided the Court with the pertinent provisions of  Defendant's merit system Ordinance.  The job announcement states that "[t]he Administrative Assistant shall receive compensation allowed in the City classification and pay plan, as adopted by the Governing Body. . . ."  This suggests that the position may not have been exempted from coverage.  Lastly, there is no evidence of the actual treatment of  Hector Chavez, the person hired in place of Plaintiff.

Evidence of that Chavez was treated as an exempt (or non-exempt) employee during his employment as the mayor's assistant would be highly probative, and presumably readily available to Defendant;  yet, this evidence has not been provided to the Court.

The Court is unpersuaded by Defendant's argument based on NMSA 1978, § 3-12-4©). That statute provides that "[t]he governing body [of a municipality with a mayor-council form of government] may provide for deputy appointed officials who may exercise the powers granted the *appointed* officials."  (Emphasis added).  Although Defendant's argument is not very well developed, the Court understands Defendant to be making the argument that the Mayor's appointed deputy cannot be covered under a merit system.  *See Webb v. Village of Ruidoso Downs*, 117 N.M. 253 (Ct. App. 1994).  The mayor of a municipality with a mayor-council form of government is an *elected* officer, not an appointed official. NMSA 1978, § 3-10-1(A)(1). Therefore, by its terms § 3-12-4©) does not apply, since a mayor's appointed deputy would  be the appointed deputy of an *elected* official.  Furthermore, even if § 3-12-4©) applied to an elected mayor's appointed deputies, is not at all clear that the position of administrative assistant to the mayor is equivalent to deputy mayor.  A deputy as defined by § 3-12-4©) "may exercise the powers granted the appointed official," whereas the administrative assistant to the mayor merely has "limited authority to make independent decisions" [Doc. 40-1 at 21].  Defendant's argument based on § 3-12-4©) presents additional unresolved questions of material fact precluding summary judgment.

The Court concludes that there is a genuine issue of fact as to whether the position of administrative assistant to the Mayor was exempted  from coverage by the personal staff exception to Title VII and the ADEA.

As noted above, the personal staff exception derives from express language in Title VII and

19

the ADEA.  The Court has examined the New Mexico Human Rights Act, NMSA 1978, 28-1-1 *et seq.*, and has determined that there is no analogous language in the NMHRA.  Accordingly, Plaintiff's complaint is not subject to a personal staff exception to the extent it seeks relief under the NMHRA.

**Administrative Leave/Termination**

Plaintiff claims that beginning in February 2011, Defendant placed Plaintiff on administrative leave, conducted an investigation into trumped up charges of misconduct against Plaintiff, and terminated her employment as retaliation for her filing the 2009 EEOC complaints. The Court separately addresses the decision to place Defendant on administrative leave and the decision to discharge Plaintiff.

Defendant argues that the temporal gap between Plaintiff's protected activity in filing the 2009 EEOC complaints and the alleged retaliatory actions in 2011 preclude Plaintiff from establishing causation, the third prong of a prima facie case of retaliation. With one important exception, discussed below, the Court generally agrees with Defendant's analysis.

In his April 15, letter, Moralez states that the underlying investigation was undertaken by Garcia, based on a complaint by Chris Redfearn (Plaintiff's erstwhile rival for the city planner position). As previously noted, Moralez hired Linda Garcia as human resources director after he took over as City Administrator.  Garcia relied on information provided by Redfearn and Laura Vasquez, the director of the City Planning Department and Redfearn's supervisor.  [Doc. 40-1 at 24-25]  As noted elsewhere in this opinion, Plaintiff has not come forward with any evidence establishing that Moralez bore ill will toward Plaintiff for having filed two EEOC complaints in 2009, over a year before he was hired as City Administrator.  The Court has carefully considered

the record, and concludes that Plaintiff has not cited any evidence that would permit a reasonable jury to find that Vasquez or Garcia bore ill will toward Plaintiff for having filed two EEOC complaints in 2009. The Court concludes that on the record before the Court, no reasonable jury could find that Plaintiff was placed on administrative leave in retaliation for having filed her 2009 EEOC complaints.

Plaintiff's claim that she was discharged as retaliation for filing her 2009 EEOC complaints presents a closer question. The Court begins by noting that in her response, Plaintiff erroneously attributes the decision to terminate her employment to former City Administrator Aguilera.  [Doc. 45 at 14] The evidence proffered establishes that Moralez, not Aguilera, was City Administrator at the time that Plaintiff was discharged. Plaintiff's response is based on an erroneous factual predicate. She has not come forward with evidence that would allow a reasonable jury to find that Moralez, Garcia, or Vasquez harbored retaliatory animus toward her for filing her 2009 EEOC complaints.  The Court would be inclined to grant summary judgment on Plaintiff's claim that she was discharged as retaliation for having filed her 2009 EEOC complaints but for the following circumstance: in his April 15, 2011 letter, Moralez refers to the fact that Plaintiff had received a written warning on November 10, 2009 for "the same or similar charges" and to "previous discipline reports recorded in your personnel file." [Doc. 40-1 at 24]  On November 10, 2009, Plaintiff would have been employed in the MVD under the supervision of  Villagran, who was directly implicated by Plaintiff's June 2009 and September EEOC complaints.   A reasonable jury could find that a pattern of disciplinary charges brought against Plaintiff by Villagran began immediately after her complaints about Salazar, and continued until she was transferred out of the MVD. The Court concludes that a reasonable jury could find that the November 10, 2009 charge

as well as other "previous discipline reports" referred to by Moralez constituted instances of

retaliation within an ongoing pattern of retaliation by Villagran against Plaintiff for having

engaged in protected conduct. A reasonable jury could further find that Moralez, albeit innocently,

relied on tainted, retaliatory charges as justification for the decision to terminate Plaintiff, rather

than impose progressive discipline: "Progressive discipline is almost always appropriate.

However, given the circumstances of this investigation and *previous discipline reports recorded in*

*your personnel file*, the conclusion supports that termination is the appropriate alternative." [Doc.

40-1 at 24] Although Plaintiff has not come forward with evidence that would permit a reasonable

factfinder to conclude that Moralez, Garcia or Vasquez personally harbored retaliatory animus

against Plaintiff for having filed her 2009 EEOC complaints, a reasonable jury nonetheless could

find that the decision to discharge Plaintiff, rather than follow the normal alternative or progressive

discipline, was attributable at least in part to the November 10, 2009 charge of misconduct. In

other words, a jury could find that in reaching the decision to discharge Plaintiff, decision makers

who were not themselves biased against her for having engaged in protected activity relied upon

earlier charge(s) against Plaintiff made by Villagran as retaliation for her having engaged in

protected activity. *See  EEOC v. BCI Coca-Cola Bottling Co. of Los. Angeles*, 450 F.3d 476, 487-

88) (10th Cir. 2006) (recognizing subordinate bias theory of causation:  observing that "the issue is

whether the biased subordinate's discriminatory reports, recommendation, or other actions caused

the adverse employment action");  *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1400 (7th

Cir. 1997) (discussing scenario in which "the discriminatory motive of the other employee, not the

autonomous judgment of the nondiscriminating decision-maker, is the real cause of the adverse

employment action").   While it is a close question, the Court concludes that a reasonable jury

could find that but for Moralez's reliance on the November 10, 2009 charge, Plaintiff would have been subjected to progressive discipline, rather than outright termination of her employment. Evidence sufficient to support a finding of but-for causation as required by *Nassar*, necessarily is sufficient to support a finding of causation under the less stringent, "motivating factor" state-law standard of *Nava*.

### Negligent Supervision

Defendant argues that Plaintiff's state-law claim for negligent supervision is barred by the New Mexico Tort Claims Act, NMSA 1978, 41-4-1, *et seq.* The Court agrees.

Section 41-4-4(A) provides that "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by . . . Sections 41-4-5 through 41-4-12 NMSA 1978." An examination of §§ 41-4-5 through -12 makes it clear that there is no waiver of immunity for negligent supervision of employees under the circumstances alleged by Plaintiff.

The Court will grant summary judgment as to Plaintiff's negligent supervision claim.

### Conclusion

The Court **grants** Defendant's Motion for Summary Judgment as to:  (1) Plaintiff's claim that the November 2010 lateral transfer was retaliation in violation of Title VII and the NMHRA for having filed the 2009 EEOC complaints;  (2) Plaintiff's claim that she was not hired for the position of city planner as retaliation in violation of Title VII and the NMHRA for having filed the 2009 EEOC complaints; (3) Plaintiff's claim that she was placed on administrative leave as retaliation in violation of Title VII and the NMHRA for having filed the 2009 EEOC complaints; and (4) Plaintiff's claim that she was subjected to negligent supervision in violation of New

23

Mexico law.

The Court **denies** Defendant's Motion for Summary Judgment as to (1) Plaintiff's claim that Plaintiff was not hired for the position of city planner as the result of sex discrimination in violation of Title VII and the NMHRA; (2) Plaintiff's claim that Plaintiff was not hired for the position of assistant to the Mayor as the result of sex and age discrimination in violation of Title VII, the ADEA, and the NMHRA; and (3) Plaintiff's claim that Plaintiff was discharged from employment as retaliation in violation of Title VII and the NMHRA for having filed the 2009 EEOC complaints.

**WHEREFORE,**

**IT IS THEREFORE HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Doc. 39], is **granted in part** and **denied in part**.

**So ordered, this 30th day of September, 2013.**

_____
M. CHRISTINA ARMIJO
UNITED STATES DISTRICT JUDGE